Ward D. Houtz v. Commissioner.
Houtz v. Commissioner
Docket Nos. 3881-65, 6929-65, and 1754-66. -281.
United States Tax Court
T.C. Memo 1966-281; 1966 Tax Ct. Memo LEXIS 3; 25 T.C.M. (CCH) 1468; T.C.M. (RIA) 66281; December 30, 1966
Willard D. Horwich, 9107 Wilshire Blvd., Beverly Hills, Calif., for the petitioner. William J. Kass, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioner's *4 income tax for the calendar years 1961, 1963, and 1964 in the amounts of $360, $345, and $282, respectively. The issue for decision is whether petitioner is entitled to deduct the dependency credit exemption for each of his two children in each of the years here involved. On brief respondent has conceded that petitioner is entitled to the dependency credit exemption for his son, Randall, for the calendar year 1961, and to the exemption for his daughter, Jeneen, for the calendar year 1964. Petitioner on brief has not requested a finding, or contended, that he has shown that he is entitled to the exemption for his daughter, Jeneen, for the calendar year 1961 or for his son, Randall, for the calendar year 1963, and we conclude from petitioner's brief that he now concedes that he has not shown that he contributed over one-half of the support for his daughter, Jeneen, for the calendar year 1961 and for his son, Randall, for the calendar year 1963. The facts as requested in petitioner's requested findings of fact show that petitioner did not contribute over one-half of the support for Jeneen for the year 1961 and for Randall for the year 1963 and these requested findings are substantially *5 in accordance with the evidence. We therefore consider the issue now to be limited to whether petitioner has shown that he contributed over one-half of the support for his daughter, Jeneen, for the calendar year 1963 and over one-half of the support for his son, Randall, for the calendar year 1964, and we will confine our findings of fact to such facts as are relevant to this issue and our opinion to a discussion of this issue. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioner, an individual residing in Los Angeles, California, filed his individual Federal income tax return for each of the years 1961, 1963, and 1964 with the district director of internal revenue at Los Angeles, California. Petitioner and Hazel D. Houtz were formerly married. On April 1, 1954, they were divorced by an interlocutory decree of the Superior Court of Los Angeles County, California, and the interlocutory decree became final on April 20, 1955. Under this decree Hazel D. Houtz (hereinafter referred to as Hazel) was given custody of the two children of the marriage, Jeneen who was born in 1944 and Randall who was born in 1947, and petitioner was ordered *6 to pay to Hazel $75 a month for support and maintenance of each of the children, making a total monthly payment of $150. During the year 1963 Jeneen attended Pomona College in Claremont, California, and lived there for 9 months of the year. All of her tuition was paid for by scholarships by the State of California and the Parsons Memorial Scholarship Fund. During the summer of 1963 Jeneen lived and worked on a ranch in Montana where she was furnished room and board and paid a small salary which totaled approximately $150 for the entire 12 weeks she spent at the ranch. During the year 1963 Hazel expended approximately $72 for clothing for Jeneen and approximately $144 for food for Jeneen for the periods of time when she was not living at the college or on the ranch in Montana. Hazel maintained a home for Jeneen where lodging was available for her when she was not at college. Hazel valued the lodging so furnished including utilities at $672 a year. In addition to clothing, food, and lodging, Hazel expended approximately $1,100 on other items for Jeneen during the year 1963, such items including a $15 per month personal allowance while at college, books, and medical and dental expenses. *7 Hazel used the $900 supplied to her by petitioner to defray expenses for Jeneen as well as certain funds of her own from the salary she received as a school teacher. During the year 1963, petitioner, in addition to paying $900 to Hazel for the support of Jeneen, gave Jeneen personal gifts totaling approximately $50 and gave her in cash $125 on February 10, 1963, and $115 on September 22, 1963. Petitioner also spent some amounts for food and entertainment for Jeneen when she visited him a few weekend days during her vacations, which amounted to approximately $35. During the year 1964 Randall resided with his mother, Hazel, for the entire year. During the year 1964, Hazel expended a little over $160 a month for Randall's support which included the value of food and lodging furnished to him, clothing of approximately $156, spending money, gifts, doctors' and dentists' bills and other miscellaneous items. Of the approximately $1,926 expended by Hazel for support for Randall, the amount of $900 came from support payments received from petitioner, and the balance was from her own resources, primarily from the salary she received as a school teacher. During the year 1964 petitioner, *8 in addition to the $900 paid directly to Hazel for support of Randall, gave Randall gifts of approximately $50 and a cash allowance of approximately $30. During the year 1964 Randall visited petitioner on ten weekends and on each of these weekends he came and returned by train at a fare of approximately $2 which petitioner paid. Petitioner took him out to two or three meals during each of the ten weekends and spent amounts for his entertainment, the total cost of the meals and entertainment for each of the ten weekends being approximately $8 or a total for the year of $80. For the years 1961, 1963, and 1964, petitioner maintained National Service Life Policy No. V12248726 on his life and the premiums on this policy for each of the years 1963 and 1964 totaled $152. The policy was a term policy and the beneficiaries during each of the years 1961, 1963, and 1964 were Randall and Jeneen. Hazel, from her employment as a teacher, earned a salary of $6,325 for the year 1961, $7,225 for the year 1963, and $8,130.25 for the year 1964. Petitioner on his income tax return for each of the years here involved claimed deductions for two dependency exemptions, one for Randall and one for *9 Jeneen. Respondent disallowed each of these claimed deductions, thereby increasing petitioner's income as reported by $1,200 in each of the years here involved. Ultimate Fact Petitioner contributed more than one-half of the support for Jeneen for the year 1963 and more than one-half of the support for Randall for the year 1964, and is therefore entitled to a deduction for a dependency exemption for Jeneen for the year 1963 and for Randall for the year 1964. Opinion Section 151(a), I.R.C. 1954, provides that a taxpayer is entitled to a deduction for dependents as defined in section 152(a). This section provides that the term "dependent" includes a son or daughter of a taxpayer, over one-half of whose support for the calendar year was received from the taxpayer. Therefore, the sole issue here is whether petitioner furnished over one-half of the support for his daughter, Jeneen, in 1963, and for his son, Randall, in 1964. A substantial portion of Jeneen's support in 1963 was by scholarship, the amount of which under the provisions of section 152(d) is not to be taken into account in determining whether petitioner furnished over one-half of her support *10 for the year. From the findings we have set forth, the maximum amount of Jeneen's support furnished in the year 1963 by her mother was approximately $1,088. Hazel testified that she expended $165.60 a month for Jeneen's support. Included in this figure was $50 a month for lodging and $6 a month for utilities. Hazel estimated that the fair rental value of the apartment which she and Randall occupied and in which Jeneen lived when she was home during the year 1963 was $150 a month, and that utilities were approximately $18 a month. Hazel testified that the apartment was a two-bedroom apartment and that when Jeneen was home she and Jeneen shared one of the bedrooms, or Jeneen usd the bedroom and she slept on a couch in the living room, but that she occupied one of the bedrooms during the remaining portion of the year and Randall occupied the other bedroom during the entire year. Petitioner argues that too high a proportion of the cost of the rental value of the apartment was allocated to Jeneen's support, but respondent contends that one-third of the rent and utilities should be allocated to Jeneen since Hazel was required, under the court decree, to furnish lodging for Jeneen. We need *11 not decide this issue since we conclude, even accepting Hazel's estimate of the amount she spent on Jeneen of $165.60 a month which we rounded out to a total of $1,988 and without considering any portion of the payment by petitioner on his National Service Life Insurance policy, which respondent contends is not support for Jeneen, that petitioner contributed over one-half of Jeneen's support during the year 1963. Petitioner, in addition to the $900 paid to Hazel, paid $240 directly to Jeneen and paid $50 for gifts for Jeneen and also expended some amounts for food and entertainment for Jeneen on the few days during the year that she spent with him. However, without including the amounts which petitioner spent on Jeneen when she visited him as constituting support for Jeneen, it is apparent that when the $290 composed of the $240 which petitioner gave directly to Jeneen and the $50 which he spent for gifts for her is added to the amount which Hazel testified she expended for Jeneen's support, her total support would come to $2,278 and that $1,190 ( $900 paid to Hazel, $240 paid directly to Jeneen and $50 for gifts) is more than one-half of the $2,278. Respondent argues that there *12 is no showing in the record that the $240 which petitioner gave directly to Jeneen was spent on Jeneen's support, and therefore that this amount should not be included in the total amount expended for her support during the year 1963. We conclude that the record as a whole supports the conclusion that this $240 was expended for Jeneen's support. Jeneen was in college during the year 1963 and the amounts composing the $240 were given to her approximately at the beginning of each semester. The entire charges by the college to Jeneen in the year 1963 were not covered by her scholarships. Hazel testified as to Jeneen's clothing and other needs. We conclude from this testimony that $72 for clothing and $15 a month allowance were inadequate. We therefore have concluded that the $240 which it is stipulated by the parties petitioner gave directly to Jeneen in 1963, was part of Jeneen's support. If Jeneen's own earnings are considered as a part of her support, neither Hazel nor petitioner might have contributed over one-half of her support in 1963 without considering the amounts spent for Jeneen by petitioner when she visited him. Since we have concluded that this amount was approximately $35, *13 we hold that even if Jeneen's earnings are included as part of her support in 1963, petitioner contributed over one-half of her support. Hazel testified that in 1964 she spent $160.36 a month as support for Randall. We have accepted this testimony and conclude that Hazel spent approximately $1,926 on Randall's support in the year 1964, of which $1,026 came from her own funds. There is some equivocal testimony in the record about other possible small amounts that Hazel spent on Randall during the year 1964, but we have concluded that the amounts which were testified to in this respect were duplications of the amounts included in the $160.36 a month expenses for Randall. These amounts covered such things as clothing and spending money which were also included in the $160.36 monthly estimate. In addition to the $900 which petitioner furnished to Hazel for Randall's support, petitioner spent $50 on gifts for Randall, gave Randall $30 as allowance and spent approximately $100 on train fare for Randall to visit him and for food and entertainment for Randall when Randall was visiting him on ten week-ends of the year. When the $180 spent by petitioner for Randall during 1964 is added to *14 the $1,926 which Hazel spent, the total is $2,106, of which one-half is $1,053. Therefore it is apparent that the $1,080 spent by petitioner (without considering the premiums on the term life insurance policy maintained by petitioner for the benefit of his children) is over one-half of Randall's support for the year 1964. Respondent argues that the $100 spent by petitioner when Randall visited him on weekends should not be considered in determining the amount contributed by petitioner to Randall's support. Respondent cites Aaron F. Vance, 36 T.C. 547 (1961), in which we stated at page 550: * * * In addition to the items conceded by respondent, petitioner would substantially increase his contributions to include as support furnished by him a part of the estimated rental value of the home in which he and his mother lived * * * life insurance premiums on insurance policies on the lives of the children * * * a portion of the cost of two organs which he bought in 1957 and installed in his home * * * and automobile expenses for conveying the children between his home and theirs * * *. We do not consider any portion of the rental value of his house and furniture as a part *15 of the support of the children. Beverly had custody of the children and the duty to provide them with a place to live. Petitioner was merely exercising his personal rights of visitation when he brought the children to his own home and he was under no necessity to provide a home for them. Life insurance premiums are not items of support. Portions of the purchase price of the organs which he installed in his own home are not allocable to the children's support and his own automobile expenses incurred in the exercise of his visitation rights would not be allocable to the children's support. * * * There is nothing in Aaron F. Vance, supra, to indicate that public transportation furnished to a child to visit with his father and food and entertainment expenses while the child was visiting are not part of support. However, even if we exclude from Randall's support in 1964, the $20 of train fare, Randall's total support would be $2,086 of which petitioner would have contributed $1,060, which is over one-half. There is certainly no indication in the Vance case or any other case to which the Court's attention has been directed that meals or entertainment furnished to children *16 by a parent who does not have their custody but has them only certain days a week is not a portion of the support for the children. In fact, the finding included in the Vance case that in addition to the amount paid by the taxpayer pursuant to the court order, the taxpayer purchased some food and provided some entertainment for the children indicates that these items are part of the children's support. Therefore, on the basis of all the evidence, we have concluded that petitioner furnished over one-half of Randall's support in 1964. Petitioner argues that premiums paid on term life insurance policies maintained for the benefit of the children are part of support. We need not decide whether petitioner retained sufficient rights under his National Service Life Insurance policy to cause no portion of the premium payments to be a part of child support. Even though the policies were term policies kept in effect to assure the children a sum of money in the event of petitioner's death, the premiums thereon would not constitute support payments if petitioner retained rights under the policy of substantial value. We have concluded that petitioner contributed over one-half of the support for *17 Jeneen in 1963 and over one-half of the support for Randall in 1964 without including as a part of their support the premiums paid by petitioner on the term life insurance policy of which Jeneen and Randall were beneficiaries. Decisions will be entered under Rule 50.